**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**KENNETH JORDAN,**

       **Petitioner,**

                                          **Case No. 1:04-cv-565**
**v.**                                          **Hon.  Gordon J. Quist**

**KENNETH ROMANOWSKI,**

       **Respondent.**

_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.        Background**

After a jury trial, petitioner was convicted of first-degree murder, MCL § 750.316(1)(a) and sentenced to a term of life imprisonment.  Petitioner's claims arise from the following circumstances:

> As background information, defendant was arrested, and bound over following a preliminary examination. After bindover, the trial court, upon a recommendation from the Center for Forensic Psychiatry, found defendant incompetent to stand trial. Roughly eight months later, defendant was deemed competent to stand trial, and a trial date was set. However, defense counsel moved to withdraw as defendant's counsel, citing a breakdown in the attorney-client relationship, as well as some potential ethical problems in presenting defendant's proposed defense. The trial court permitted defense counsel to withdraw, and granted defendant's ensuing motion to represent himself at trial.

*People v. Jordan*, No. 232287 (Mich. App. Dec. 3, 2002).

Petitioner, through counsel, presented the following issues and sub-issues in his direct appeal to the Michigan Court of Appeals:

I.      Did the trial court abuse its discretion when it granted [petitioner's] request for self-representation without properly determining and insuring that the waiver of counsel was voluntary, knowing, and understanding as required by the applicable court rule, statute, and caselaw?

II.    A.    Did counsel make a serious mistake in failing to immediately seek to have a competency examination conducted on [petitioner] prior to preliminary examination?

        B.    Did counsel make a serious mistake where he failed to challenge [petitioner's] oral and written inculpatory statements on the basis that he lacked the competence necessary to voluntarily, knowingly and intelligently waive his right against self-incrimination?

III.   Were the trial court's jury instructions reversibly erroneous, where it failed to give instructions regarding intoxication as a defense to a specific intent crime, CJI 2d 6.2, which was a basic and controlling issue in this case?

The Michigan Court of Appeals affirmed the conviction. *Jordan*, No. 232287.

Petitioner file an application for leave to appeal to the Michigan Supreme Court. *See* docket no. 28. Petitioner did not set forth any specific issues on appeal, but merely submitted a copy of the court of appeals decision with his application. *Id.* The Michigan Supreme Court denied the application, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Jordan*, No. 122932 (Mich. May 30, 2003).

Petitioner raises the following issues in the present habeas petition:

I.      Conviction obtained by the Trial Court's abuse of discretion in permitting petitioner to represent himself while petitioner did so involuntarily, unknowingly, and unintelligently.

        Petitioner had been initially found incompetent to stand trial at a hearing on April [], 2000. Subsequently, on August 16, 2000 at a second competency hearing, petitioner was reported to be competent. It was noted by the trial court on the record "the one problem which does not relate to competency would be the issue of literacy, and the recommendation is that anything that is done in this case be done verbally and not in writing . . ." A competency report submitted to the trial court included the following statements regarding

2

petitioner's mental status: ". . . Psychological testing confirmed intellectual impairment and particularly limitations in reading and math skills, as well as memory. . ."

II.     Conviction was obtained by counsel's ineffective assistance where counsel failed to immediately seek to have a competency exam conducted on petitioner prior to preliminary examination.

Petitioner requested and was provided with court appointed counsel. After he was arraigned on the arrest warrant on November 29, 1999. He was represented by appointed counsel throughout the the [sic] district court proceedings, including the preliminary examination. On February 14, 2000 an order for evaluation for criminal responsibility and an order for competency examination was entered. On February 15, 2000, counsel filed a notice of diminished capacity/insanity indicating that a defense based upon petitioner's state of mind may be prosecuted on his behalf. Counsel had concerns about petitioner's competency but acted on them too late.

III.    Conviction was obtained by counsel's ineffective assistance where he made the serious mistake of failing to challenge petitioner's oral and written inculpatory statements on the basis that he lacked the [competence] necessary to voluntarily, knowingly, and intelligently waive his right against incrimination.

Having been declared delusional and having hallucinations at the time of the alleged homicide, the petitioner insisted that a third Party was present at the scene, later acknowledging that person was in his mind and urged him to keep doing what he was doing. Counsel did not seek to suppress petitioner's statements.

IV.     Conviction was obtained by the denial of a fundamentally fair and impartial trial.

The trial court failed to instruct the jury regarding intoxication as defense to a specific intent crime which was a basic and controlling issue in the petitioner's first degree murder trial.

3

## II.        Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  The court recognizes that petitioner did not complete the application for leave to appeal to the Michigan Supreme Court.  Nevertheless, that court reviewed the Michigan Court of Appeals decision and determined not to grant the application for leave to appeal. Based on this record, the court concludes that petitioner has effectively exhausted the claims raised in the Michigan Court of Appeals.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

4

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts.   *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*).   An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct.   28 U.S.C. § 2254(e)(1).   A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous.   *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III.    Petitioner's Issue IV is barred by the doctrine of procedural default and not subject to habeas review.

#### A.    Procedurally defaulted claim

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).   A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996).   Not every state procedural

rule will warrant application of the procedural default doctrine.  Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine.  "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Here, the Michigan Court of Appeals declined to address petitioner's claim related to the intoxication instruction:

> Finally, defendant asserts that the trial court erred by failing to instruct, sua sponte, the jurors on the issue of intoxication. However, defendant assented to the trial court's proposed jury instructions. Accordingly, this issue is deemed forfeited. *People v. Carter*, 462 Mich. 206, 208-209; 612 NW2d 144 (2000).

*Jordan*, No. 232287, slip op. at 3.  As reflected in the Michigan Court of Appeals opinion, this issue was deemed forfeited under a Michigan procedural rule.  *See Carter*, 462 Mich. at 214 ("The rule that issues for appeal must be preserved in the record by notation of objection is a sound one. Counsel may not harbor error as an appellate parachute") (citation omitted).  There is no question that the procedural rule which requires preserving both constitutional and non-constitutional issues at the trial by contemporaneous objection was firmly established and regularly followed at the time of petitioner's appeal.  *See People v. Carines*, 460 Mich. 750, 764; 597 N.W.2d 130 (1999); *People v. Grant*, 445 Mich. 535, 546-47; 520 N.W.2d 123 (1994).   Based on this record, petitioner's Issue IV is procedurally defaulted.

Accordingly, habeas review of these claims is precluded  unless he can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501

U.S. at 750.  Petitioner fails to allege any "cause" for this default.  In the absence of cause, it is unnecessary to consider any prejudice resulting from this alleged error of federal law.

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.   In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329.  *See, e.g. Paffousen v. Grayson*, No. 00-1117, 2000 WL 1888659 *3 (6th Cir. Dec. 19, 2000) ("[I]n order to establish actual innocence a petitioner must show that it is more likely than not that no reasonable juror would have convicted him"). Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Paffousen*, 2000 WL 1888659 at *3.

Petitioner offers no new evidence that he is actually innocent of the crime for which he was convicted.  Accordingly, he has failed to meet the fundamental miscarriage of justice exception. Having failed to meet the exception under *Coleman*, petitioner's Issue IV is procedurally barred and not subject to habeas review.

## IV.    Petitioner's remaining claims are without merit.

### A.    Petitioner's self-representation (Issue I)

First, petitioner contends that his waiver of counsel was not voluntary because he was illiterate at the time and the court did not specifically question him "about his literacy." Petitioner's Brief at 17-18 (docket no. 1). Petitioner also points out that the trial court was aware of a report from the Center for Forensic Psychiatry which "indicated that [petitioner] was illiterate, could not read and write and should have his counsel read or explain orally matters related to the court and criminal process." *Id.* at 22.

Petitioner cites *People v. Dennany*, 445 Mich. 412 (1994) and *People v. Holcomb*, 395 Mich. 326, 336-37 (1975), for the proposition that Michigan trial judges must affirmatively establish on the record that the criminal defendant is literate, competent and understanding in his decision to decline representation by counsel. Petitioner also cites MCR 6.005(D), which provides that:

> **(D) Appointment or Waiver of a Lawyer.** If the court determines that the defendant is financially unable to retain a lawyer, it must promptly appoint a lawyer and promptly notify the lawyer of the appointment. The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
> > (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and
> >
> > (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

MCR 6.005.

The Michigan Court of Appeals performed a detailed discussion of this issue, which appears below:

8

Defendant argues on appeal that, in essence, the trial court abused its discretion in permitting him to represent himself because there was some question regarding his literacy. A criminal defendant's right to represent himself is explicitly guaranteed by the Michigan Constitution and statute, Const 1963, art 1, § 13; MCL 763.1. *See People v. Adkins (After Remand)*, 452 Mich. 702, 720; 551 NW2d 108 (1996); *People v. Kevorkian*, 248 Mich.App 373, 417; 639 NW2d 291 (2001). The right is not absolute, however, because several requirements must be met before a defendant may proceed in propria persona. *People v. Anderson*, 398 Mich. 361, 367; 247 NW2d 857 (1976).

First, in order to prevent frivolous appeals by defendants who were represented by counsel, a defendant's request to represent himself must be unequivocal. *Adkins, supra* at 722. Second, the trial court must determine that the defendant's assertion of his right is knowing, intelligent, and voluntary. *Id.* Third, the trial court must determine that the defendant's self-representation will not disrupt, inconvenience or burden the court. *People v. Dennany*, 445 Mich. 412, 432; 519 NW2d 128 (1994); *Anderson, supra* at 368. Fourth, and finally, the trial court must substantially comply with MCR 6.005, which requires the court first advise the defendant of the charge, the maximum possible prison sentence, any mandatory minimum sentence, and the risk of self-representation, and offer the defendant at each proceeding the opportunity to consult with a lawyer. *Adkins, supra* at 722-723. The record must affirmatively show that the court advised the defendant of his right to counsel and that the defendant waived that right. MCR 6.005(E); *People v. Lane*, 453 Mich. 132, 137; 551 NW2d 382 (1996); *Dennany, supra* at 434.

Defendant contends that the trial court's failure to find that defendant was illiterate renders the court's decision to allow defendant to represent himself an abuse of discretion. However, defendant's assertion that a court must affirmatively find a defendant to be literate is unsupported by case law.

Although defendant is correct that our Supreme Court has stated that a court must make an affirmative finding that the defendant was "literate, competent, and understanding," *see, e.g., People v. Holcomb*, 395 Mich. 326, 335-336; 235 NW2d 343 (1975), more recently, our Supreme Court held that a trial court need only substantially comply with substantive requirements in order to discern whether a defendant's waiver was unequivocal, knowing and intelligent. *Adkins, supra* at 726. A defendant must know what he is doing, and his "eyes must be open." *Id.* at 722. The existence of a knowing and intelligent waiver of counsel depends on the particular facts and circumstances of a case. *Anderson, supra* at 370. The trial judge is in the best position to determine whether the defendant has made the waiver knowingly and voluntarily. *Id.* at 723. No formal rules must be followed, nor is there a need to follow any formal litany when questioning defendants. *Id.* at 725-727. Therefore, defendant's argument that a trial court must ascertain whether a defendant is literate is without merit. A defendant's literacy, like his degree of education or

degree of exposure to the legal system, is only one factor in determining whether defendant knowingly waived his right to counsel.

Even if we found that illiteracy precludes self-representation, defendant's argument would still fail because he told the trial court that he could, in fact, read and write. For example, defendant told the trial court that he gained his knowledge about the legal system from reading various books. Defendant also represented that he would write out any voir dire questions for the court to ask the venirepersons. Further, there was testimony at trial that defendant told one of the detectives that he could read and write, and that he had a high school education. According to this witness, defendant wrote out and signed a statement of what happened on the night of the victim's killing. We find defendant's assertion that he is illiterate to be disingenuous.

Defendant also argues that the trial court should not have allowed him to waive his right to counsel because, by doing so, defendant essentially ruined his ability to present an insanity defense. However, defendant's argument creates a new requirement–that a court must consider the effect self-representation could possibly have on a defendant's ability to set forth a particular defense. However, under *Adkins*, *supra*, a court should focus only on a defendant's competency when deciding whether a defendant should represent himself. Therefore, defendant's argument must fail.

*Jordan*, No. 232287, slip op. at 1-3.

While the Sixth Amendment secures to a criminal defendant facing incarceration the right to counsel,  the defendant also has a constitutional right to represent himself.  *Faretta v. California*, 422 U.S. 806 (1975); *United States v. Wade*, 388 U.S. 218, 224 (1967); *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006).

When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits.  Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

*Faretta*, 422 U.S. at 835 (internal citations and quotation marks omitted).

10

"While the Constitution does not force a lawyer upon a defendant, it does require that any waiver of the right to counsel be knowing, voluntary, and intelligent." *Iowa v. Tovar*, 541 U.S. 77, 87-88 (2004) (internal citations and quotation marks omitted). To this end, the Sixth Circuit requires federal district courts within this circuit to conduct an inquiry as set forth in 1 *Bench Book for United States District Judges*, 1:02-2 (3d ed. 1986) before accepting a waiver of a right to an attorney. *King*, 433 F.3d at 492; *United States v. McDowell*, 814 F.2d 245, 250 (6th Cir. 1987). However, this type of formal, detailed inquiry is not required by clear Supreme Court precedent. *King*, 433 F.3d at 492. Accordingly, in the context of federal habeas review, there is no script that a state court must follow in determining whether a criminal defendant has made a "knowing, voluntary, and intelligent" waiver of counsel. *Id.* Rather, the state court must reasonably apply Supreme Court precedent, which requires looking at the "whole record" to determine if the defendant made a knowing and intelligent waiver. *Id.*

Here, the record establishes that petitioner's waiver of counsel was knowing, voluntary, and intelligent. Petitioner was evaluated three times at the State of Michigan Center for Forensic Psychiatry (the "Center"). Petitioner was initially found not competent to stand trial based upon a March 24, 2000 evaluation by Mr. Jeff Davis. Hear. Trans. (April 7, 2000) at 1-5. Although neither party submitted a copy of this competency evaluation, the findings were summarized in the second evaluation as follows:

> Mr. Jordan was initially evaluated regarding his competency to stand trial on the above charges on March 24, 2000 by Jeff Davis, Ph. D. During that evaluation, Mr. Jordan was noted to be unresponsive at times to questions, or his responses were vague with long latencies. He was tearful and crying at times, and indicated a history of as well as recent thoughts of suicide. He reported a history of hearing voices since he was a child, and that several days prior to the evaluation, they told him to hang himself. He had difficulties concentrating, as well as a limited fund of general knowledge and reported a history of special education. He appears confused about his legal situation, indicated little knowledge of the court process, available

11

pleas or the consequences.  Dr. Davis felt that based on Mr. Jordan's presentation he was probably feigning or exaggerating signs of psychiatric disturbance.  However, he also could be experiencing a pronounced depressive reaction to his legal situation. Based on the seriousness of the charge, Dr. Davis felt a conservative opinion was warranted and further evaluation indicated.  He subsequently recommended him as incompetent to stand trial, and subsequent to an adjudication of incompetency, Mr. Jordan was admitted to the Center for treatment on May 11, 2000.

Competency Report (July 28, 2000), attached to government's appellate brief (docket no. 27).

The trial judge adopted the report, stating "I'm satisfied that he does not comprehend the nature of the proceedings that are involved here and he doesn't have a significant enough appreciation for his legal circumstances such that I would find that he's competent to stand trial at this time."  Hearing Trans. (April 7, 2000) at 4.

When examined on July 28, 2000, petitioner's condition had improved to the extent that he was deemed competent to stand trial.  Competency Report (July 28, 2000).  This report noted that petitioner's intelligence was in the low average range, and recommended that "all major written communications and documents reviewed with him orally by counsel because of his limited literacy."  *Id.* at 3.

After reviewing the report, the trial judge found that petitioner was competent to stand trial, stating in part:

> Now I have reviewed [the Center's] report and it indicates in the report a history with regard to why Mr. Jordan was opined to be incompetent at the previous juncture in this case and that he was admitted for hospitalization at the center and received some supportive therapy, and the report indicates that his condition improved and at this point he is, in the examiner's opinion, able to appreciate the nature and objectives of the proceeding against him and is capable of working with his attorney in his defense, and the one problem which does not relate to competency would be the issue of literacy, and the recommendation is that anything that is done in the case be done verbally and not in writing, and I will try to keep that in mind and ask that you remind me of that, Mr. Wilson [petitioner's counsel].  If something comes up, we need to address that.

But, in any event, I reviewed this report and I'm satisfied based on the report that he's submitted to me, and in the absence of any evidence to the contrary, that indeed Mr. Jordan is competent to proceed to trial in this matter and I certify him to be competent, and this matter is set for trial, as I recall, starting November 7th and that date we'll proceed with at this time.

Hearing Trans. (Aug. 16, 2000) at 5.

In a third report from October 9, 2000, the examiner found that petitioner did not

meet the statutory requirements for a finding of "legal insanity." Competency Report (October 9,

2000), attached to government's appellate brief (docket no. 27). At that time, petitioner's daily

routine included activities inconsistent with his claim of illiteracy, such as reading his Bible and

doing crossword puzzles. *Id.* at 6. The examiner found petitioner frustrated with his defense, and

tearful regarding his predicament. *Id.* at 4-5. Nevertheless, the examiner described petitioner as

alert, well focused, and "[c]ognitively, his functioning appeared normally intact." *Id.* The examiner

made the following findings regarding petitioner's mental condition:

On formal examination of mental status, there were no signs of severe mental disorder including hallucinatory and delusional phenomena, i.e., disorders of perception and thinking, evident in Mr. Jordan's statements or in his observable behavior. He also denied experiencing such typical schizophrenic delusions as thought broadcasting, mind control, thought insertion, special messages, and special mental powers; paranoid symptoms such as people following, plotting against, or talking ominously about him; and unusual experiences such as somatic delusions, changes in body image, other rare irrational beliefs. In regard to discussion of his recent thoughts, he stated, 'I be thinking about my case a lot, studying my paper work (legal documents).['] There were also no evident disorders of language manifesting in abnormal tangential or circumstantial ideation, non sequitors, illogicality, loose associations, or other language disturbances. His associations were coherent, goal-directed, and lacked tendencies to derail into idosyncratic or irrelevant subject matter. His speech rate also appeared normal. . . . He finally denied any suicidal ideation, plans or gestures or thoughts of other harm during the past month.

Competency Report (Oct. 9, 2000).

At the October 23, 2000 hearing, petitioner's counsel moved to withdraw. Hearing

Trans. (Oct. 23, 2000) at 3. Counsel stated that on October 16th, he received the report and

13

discussed strategy with petitioner in light of the report.  *Id.*   At that time, petitioner indicated his belief that his counsel, Mr. Wilson,  was working with the prosecutor to convict, that he did not want Mr. Wilson to be his lawyer and that he wanted to represent himself.  *Id.*  For his part, Mr. Wilson stated that he had "some ethical problems in going forward with the strategy that [petitioner] wishes to pursue at trial."  *Id.* at 3-4.   Petitioner repeatedly requested his desire to have his counsel withdraw, to decline another court-appointed attorney, and to represent himself, despite shortcomings in his own understanding of the law, knowledge that he faced a life sentence for the charged offense, and repeated warnings from the trial judge about the hazards of self-representation. *Id.* at 3-12.   During the hearing, petitioner stated to the court that he obtained legal knowledge by looking up things in law books and that he has read law books over the past year.  *Id.*  The court allowed Mr. Wilson to withdraw as counsel, allowed petitioner to represent himself, and agreed to appoint another attorney to advise petitioner at trial.  *Id.*

At a later hearing, petitioner stated that he could write out jury voir dire questions for the court:

> THE COURT:       Now there was some confusion in your competency report,
>                  Mr. Jordan.   I want to know, are you able to write out these
>                  questions, if you have any that you want me to ask the jury?
>
> THE DEFENDANT:  Yes, sir.

Hearing Trans. (Nov. 3, 2000) at 5.   At the hearing, the court also addressed petitioner's written request for pre-trial discovery.  *Id.* at 8.  Ultimately, petitioner submitted nine written voir dire questions to the judge.  Trial Trans. I at 7-8.  Petitioner conducted his trial defense at the trial with an advisor, Mr. Fisher of the Public Defenders Officer.  Trial Trans. I at 4.

While the Supreme Court in *Faretta* noted that the defendant waiving his right to counsel was literate, neither party has cited Supreme Court authority (and this court has found none)

14

that requires a trial court to explicitly establish that a criminal defendant must be "literate" to represent himself.  Rather, the court must make this determination based upon the whole record. *King*, 433 F.3d at 492.  Even if such authority existed, petitioner is not "illiterate." While the competency reports indicate that petitioner has low average intelligence, neither of the two reports available to this court (i.e., those dated July 28th and October 9th) opine that petitioner is illiterate. Furthermore, petitioner's actions belie his claim that he was either illiterate or incapable of representing himself due to illiteracy.  For example, in October 2000, petitioner was reading his Bible and doing crossword puzzles. In addition, as both this court and the Michigan Court of Appeals observed, petitioner submitted written documents to both the police and the court. Accordingly, based upon the whole record, petitioner's decision to waive and attorney and to represent himself was "knowing, voluntary, and intelligent" and that he made the decision "with eyes open."   *Tovar*, 541 U.S. at 87-88;  *Faretta*, 422 U.S. at 835; *King*, 433 F.3d at 492.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.

### B.      Ineffective assistance of counsel (Issues II and III)

Next, petitioner contends that his counsel was ineffective for failing to have petitioner undergo a competency examination before his preliminary examination (Issue II), and failing to challenge petitioner's inculpatory statements on the basis that he lacked the competency to waive his right against self incrimination (Issue III).  The Michigan Court of Appeals addressed these issues as follows:

15

Defendant next asserts that he was denied the effective assistance of counsel, citing two incidents: first, defendant's trial counsel's failure to seek a competency hearing before the preliminary examination; and second, his counsel's failure to challenge the voluntariness of several inculpatory statements made by defendant to the police.

To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for defense counsel's errors, there was a reasonable probability that the result of the proceeding would have been different. *People v. Knapp*, 244 Mich.App 361, 385; 624 NW2d 227 (2001). A defendant must affirmatively demonstrate that counsel's performance was objectively unreasonable and so prejudicial that it deprived him of a fair trial. *Id.* The defendant must also overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 385-86. "This Court will not second-guess counsel regarding matters of trial strategy and, even if defense counsel was ultimately mistaken, this Court will not assess counsel's competence with the benefit of hindsight." *Id.* at 386-387, n 7 (citation and internal punctuation omitted).

Defendant fails to show how counsel's failure to request a competency examination in any way prejudiced him. Had defense counsel requested a competency hearing, it would have only served to delay defendant's preliminary examination. Defendant does not show how he would have prepared for the preliminary examination any differently. Moreover, defendant fails to show that the trial court lacked probable cause at the preliminary examination to bind him over for trial. Therefore, the only effect would have been to delay the time when he was bound over. Defendant does not argue that, but for this "error," the outcome of his case would have been any different. Therefore, defendant's argument is without merit.

Defendant also asserts that he was denied effective assistance of counsel because his attorney failed to request a hearing pursuant to *People v. Walker (On Rehearing)*, 374 Mich. 331; 132 NW2d 87 (1965), before his preliminary examination. Defendant argues that his counsel should have recognized defendant's questionable mental status at the time he made the inculpatory statements, and that counsel's failure to move for a hearing to determine the voluntariness of the statements prejudiced his case. Defendant again fails to show how he was prejudiced by his counsel's inaction.

After defendant dismissed his appointed attorney, he still had an opportunity to seek such a hearing before trial. However, he did not do so. Therefore, defendant's counsel did exactly what defendant himself chose to do. The fault for failing to request a hearing rests with defendant, who could have requested such a hearing before the start of trial. Case law is clear that "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to

16

a denial of 'effective assistance of counsel.' ' *Kevorkian, supra* at 419, *quoting Faretta v. California*, 422 U.S. 806, 835, n 46; 95 S Ct 2525; 45 L.Ed.2d 562 (1975). Therefore, because defendant failed to show how he was prejudiced by his trial counsel's inaction, his argument that he was denied effective assistance of counsel is without merit.

*Jordan*, No. 232287, slip op. at 3.

In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 690. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original). Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

In evaluating counsel's performance, the court should be mindful that "[t]he Constitution does not guarantee every defendant a successful defense," nor does it guarantee the accused "an excellent lawyer." *Moran v. Triplett*, No. 96-2174, 1998 WL 382698 at *3, *5 (6th Cir. 1998). Rather, "[t]he Sixth Amendment entitles criminal defendants to effective assistance of counsel which means the customary skills and diligence that a reasonably competent attorney would

17

perform under similar circumstances." *United States v. Boone*, 437 F.3d 829, 839 (8th Cir.) (internal quotes omitted), *cert. denied sub nom Washington v. United States*, 127 S. Ct. 172 (2006).

### 1.    Competency examination before preliminary examination (Issue II)

First, petitioner contends that his counsel should have obtained a competency examination before the preliminary examination.  In Michigan, the preliminary examination is a limited proceeding to determine whether "an offense not cognizable by the district court has been committed and that the defendant committed it," and results in either the discharge of the defendant, the retention of the criminal case in the district court, or the bind over of the defendant for trial in the circuit court. *See* MCR 6.110. Given the limited nature of a preliminary examination in Michigan, courts have not viewed this proceeding as a "critical stage" of a criminal action which requires legal representation. *See Van v. Jones*, 475 F.3d 292, 310-11 (6th Cir. 2007) (the advantage of having an attorney at a preliminary examination in Michigan carries "no ultimate and unrecoverable substantive import for the defendant"); *Lundberg v. Buchkoe*, 389 F.2d 154 (6th Cir. 1968) (observing that the defendant did not enter a plea, make a statement, did not waive or lose a defense).  Furthermore, an objection to being bound over for a trial after the preliminary examination is not a basis for overturning a conviction.  *See, for e.g., Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) ("although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause"); *Yohey v. Collins*, 985 F.2d 222, 228-229 (5th Cir.1993) (a habeas petitioner's claim for federal habeas relief for pretrial issues are mooted by his subsequent conviction); *Sweezer v. Borgert*, No. 91-2415, 1992 WL 323078 at * 1 (6th Cir. Oct. 21, 1992) (" [petitioner's] objection to being bound over for trial after the preliminary exam is not a basis for overturning his conviction").

18

Here, petitioner did not testify, plead guilty, or waive any rights at the preliminary examination. The district court found probable cause that petitioner committed the crime and bound him over to stand trial in the state circuit court. Prel. Exam. Trans. at 32. Because petitioner was subsequently found competent and convicted, the bind-over and any pretrial detention-related claims are moot. Accordingly, petitioner is not entitled to habeas relief regarding the alleged ineffective assistance of counsel that occurred prior to his preliminary examination.

### 2.    Petitioner's claim regarding exclusion of statements (Issue III)

Finally, petitioner contends that counsel was ineffective for failing to challenge his oral and written statements on the basis that he was not competent to waive his constitutional right against self-incrimination. Petitioner contends that he was suffering from mental illness, that he initially believed that a third party was present at the scene, but that he later acknowledged that the person was in his mind and urging him to keep on assaulting the victim. Petitioner contends that his counsel should have moved to exclude this evidence and to have a *Walker* hearing prior to trial.[1]

The Michigan Court of Appeals addressed this issue as follows:

Defendant also asserts that he was denied effective assistance of counsel because his attorney failed to request a hearing pursuant to *People v. Walker (On Rehearing)*, 374 Mich. 331; 132 NW2d 87 (1965), before his preliminary examination. Defendant argues that his counsel should have recognized defendant's questionable mental status at the time he made the inculpatory statements, and that counsel's failure to move for a hearing to determine the voluntariness of the statements prejudiced his case. Defendant again fails to show how he was prejudiced by his counsel's inaction.

After defendant dismissed his appointed attorney, he still had an opportunity to seek such a hearing before trial. However, he did not do so. Therefore, defendant's counsel did exactly what defendant himself chose to do. The fault for failing to

---

[1] "A *Walker* hearing is a hearing held in the Michigan state courts, outside the presence of the jury, to determine whether a confession was voluntarily made. *See People v. Walker*, 374 Mich. 331, 132 N.W.2d 87 (1965)." *Machacek v. Hofbauer*, 213 F.3d 947, 951 (6th Cir. 2000).

request a hearing rests with defendant, who could have requested such a hearing
before the start of trial. Case law is clear that "a defendant who elects to represent
himself cannot thereafter complain that the quality of his own defense amounted to
a denial of 'effective assistance of counsel.' " *Kevorkian, supra* at 419, *quoting
Faretta v. California*, 422 U.S. 806, 835, n 46; 95 S Ct 2525; 45 L.Ed.2d 562 (1975).
Therefore, because defendant failed to show how he was prejudiced by his trial
counsel's inaction, his argument that he was denied effective assistance of counsel
is without merit.

*Jordan*, No. 232287, slip op. at 3.

At the preliminary examination held on January 5, 2000, Detective Ferrier testified

that he interviewed petitioner twice on November 27, 1999, within hours of the murder.  Prel. Exam.

Trans. at 15-19.  The detective also testified that petitioner was read his *Miranda* rights and that

petitioner was willing to talk to him about the incident.  *Id.* at 18-19.  Petitioner's counsel performed

a voir dire of the detective, which established that another officer read petitioner his *Miranda* rights,

that petitioner signed a waiver of the rights, and that petitioner then gave a tape recorded interview.

*Id.* at 19-21.  Counsel moved to have the petitioner's statement to the detective excluded absent

evidence of the waiver.  *Id.* at 21-26.  After reviewing the signed waiver and receiving additional

testimony from the detective, the court overruled the objection.  *Id.* at 26. Detective Ferrier testified

that petitioner had a third interview on November 29th, at which time the detective read petitioner

his *Miranda* rights.  *Id.* at 26-27.

As previously discussed, the court found petitioner incompetent to stand trial on April

7, 2000, then found him competent to stand trial on August 16,  2000, and noted the receipt of the

Center's opinion rejecting petitioner's insanity claim on October 23, 2000. Petitioner began

representing himself on October 23, 2000 and his trial commenced on November 7, 2000.  While

petitioner contends that his counsel should have moved to exclude evidence of his interviews with

the detective, he presents no evidence that he was mentally ill or otherwise incompetent when he

made the inculpatory statements in November 1999.  The court notes that the Dr. Davis found petitioner incompetent to stand trial in March 24, 2000,  believed the petitioner was probably feigning a psychiatric disturbance and exaggerating symptoms, but recommended that petitioner was not competent to stand trial due to the seriousness of the charge and the possibility that petitioner could have been suffering from a "pronounced depressive reaction to his legal situation."

Nothing in the record, however, indicates that petitioner was mentally ill or suffering from any other psychiatric disturbance when he waived his *Miranda* rights and gave his statements in November 1999.  The October 9, 2000 competency report flatly rejected petitioner's apparent claim of insanity. While petitioner is now claiming that he heard a third party telling him to kill attack the victim, he did not mention any such thoughts when he described the incident, in great detail, to the examiner on October 9, 2000.  Rather, petitioner gave an exculpatory statement to the examiner stating that he saw two people coming out of her apartment, went up the stairs, and found her "shaking, bleeding from the forehead, with a pair of scissors in her left cheek."  Competency Report (Oct. 9, 2000) at 3.  Petitioner denied any "peculiar mental symptoms" and claimed that he was intoxicated at the time.  *Id.* at 4.

Based on this record, petitioner's counsel had no basis to bring a motion to exclude the November 1999 statements on the grounds asserted by petitioner, i.e., that he was not competent to waive his *Miranda* rights.  "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."  *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999). *See Lilly v. Gillmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth

Amendment does not require counsel . . . to press meritless issues before a court").[2]  Accordingly, petitioner's counsel did not provide deficient representation.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.

## V.    Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**.  Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Entered:  July 5, 2007                              /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[2] The court notes that neither party has supplied copies of petitioner's statements to the court. The trial transcript merely states that three cassette tapes were played to the jury on the fourth day of trial (November 14, 2000).  Trial Trans. IV at 623, 674, 680.